## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

FULL TILT PERFORMANCE LLC, a
Delaware limited liability company,

Plaintiff,

v.

JAMES NEUMANN, an individual,
and LEROY GOEWEY, an individual,

Defendants.

Civil Action No. _____

**COMPLAINT AND JURY DEMAND**

Plaintiff, Full Tilt Performance LLC ("Full Tilt"), by and through counsel, for its

complaint against James Neumann ("Neumann") and Leroy Goewey ("Goewey") (collectively

"Defendants"), states and alleges as follows:

### INTRODUCTION AND ACTUAL CONTROVERSY

1.      This case arises out of Neumann's and Goewey's improper actions in connection

with their employment with Performance Diesel, Inc. ("PDI"), and their conspiracy to breach

their contractual, statutory, and common law obligations to Full Tilt, their former employer.

Neuman and Goewey solicited and conspired with one another to leave Full Tilt in violation of

their non-solicitation clauses.  Further, upon information and belief and based on initial forensic

review of the devices they used at Full Tilt, they downloaded, printed, and retained confidential

and trade secret information belonging to Full Tilt from Full Tilt's computers after they had

resigned from Full Tilt.  When Full Tilt sent separate cease and desist and demand letters to PDI,

Neumann, and Goewey, PDI immediately retained one law firm to represent all three of them,

further suggesting a conspiracy between and among them.  The law firm, on their behalf,

represented that Neumann and Goewey would not solicit Full Tilt customers, but within weeks of making this representation, Neumann visited at least one Full Tilt customer.  Neumann and Goewey also have refused to return numerous external USB/electronic storage devices that they connected to their Full Tilt laptop computers before and after they resigned.

2.      Plaintiff seeks injunctive relief against Defendants, to include orders compelling them to return items that they took and to enforce their legal obligations against them.  Plaintiff further seeks relief on its claims for breach of contract, breach of duty of loyalty, civil theft, conversion, misappropriation under the Minnesota Trade Secrets Act, misappropriation under 18 U.S.C. § 1836(b), tortious interference with contract, tortious interference with prospective economic advantage, conspiracy, and unjust enrichment.  Plaintiff seeks equitable and legal relief to the fullest extent provided under the law, as well as an award of its attorney fees and costs in having to bring this action due to Defendants' illegal and willful bad acts.

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Full Tilt is a Delaware limited liability company with its principal place of business located at 2041 Highway 71 North, Jackson, Minnesota 56143.

4.      Defendant James Neumann is a citizen of the United States and the State of Illinois.  He worked for Plaintiff in various states and, upon information and belief, is working for PDI in various states.  Upon information and belief, Neumann resides at 403 N. Independence Street, Mascoutah, Illinois 62258.

5.      Defendant Leroy Goewey is a citizen of the United States and the State of Indiana.  He worked for Plaintiff in various states and, upon information and belief, is working for PDI in various states.  Upon information and belief, Goewey resides at 5023 Wolflake Drive, Lafayette, Indiana 47905.

6.      The Court has original jurisdiction over this matter under 28 U.S.C. § 1331, as this action alleges a claim arising under the laws of the United States.  The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

7.      The Court also has original jurisdiction over this matter under 28 U.S.C. § 1332(a)(2), as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within this District and, further, a substantial part of property that is the subject of the action is situated within this District.  Alternatively, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because one or more of the Defendants is subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### A.  Full Tilt's Business

9.      Full Tilt is the premier manufacturer of American-made performance parts for the industry's top truckers.  Founded in 2004 by a trucking family with more than 40 years of driving history, Full Tilt has revolutionized the trucking industry through its unparalleled reputation for quality products that offer performance and reliability.

10.     Full Tilt's manufacturing and sales business depends on certain confidential and proprietary information, including Full Tilt's customer database and details relating to its customers and prospective customers.  The database is housed on a platform called "Salesforce" ("Salesforce Database").

11.     Full Tilt's Salesforce Database is unique to Full Tilt and central to Full Tilt's business.  The Salesforce Database houses all of the confidential account information relating to

Full Tilt's leads (prospective customers) and current customers, including the contact information for the leads and customers. The Full Tilt Salesforce Database includes several hundred account entries which have been compiled and curated over multiple years.

12.     The Salesforce Database includes a significant amount of curation and additional information that is exclusive to Full Tilt, including records of any contacts made by Full Tilt's sales team, sales made to the lead or customer by a Full Tilt administrative employee, and other information relevant to the lead or customer relationship.

13.     Full Tilt takes specific actions to keep its Salesforce Database confidential. Specifically, each member of Full Tilt's sales team, and any other administrative or executive employee that accesses Salesforce, is required to have a unique login for the Salesforce platform. Only the Full Tilt sales team, executives, and administrative employees who will receive orders from customers are given logins. As a result, Full Tilt's Salesforce Database is internally accessible to a limited number of employees. Additionally, Full Tilt's Salesforce Database is not publicly-available and has not been otherwise disclosed.

14.     Full Tilt's Salesforce Database and the curated information contained therein provides independent economic value to Full Tilt. Full Tilt's sales team utilizes the Salesforce Database to compile lists of customer leads to pursue, and the Salesforce Database house the sale team's interactions with each lead and customer. This information, including customer's purchase history, is central to Full Tilt's ability to compete in the marketplace.

**B.  Neumann and Goewey and Their Employment With Full Tilt**

15.     Goewey started working for Full Tilt on or about January 30, 2017, as a Regional Sales Manager.

16.     Goewey recommended that Full Tilt hire Neumann, and Neumann started on or about August 28, 2017 as a Regional Sales Manager for Full Tilt.

17.     In offering both Goewey and Neumann employment, Full Tilt advised them of the requirement that they each would have to sign an agreement, which includes provisions prohibiting non-solicitation of employees and customers, providing for the protection of confidential information, including trade secrets, and requiring the return of Full Tilt property and confidential information upon the termination of their employment.

18.     Goewey agreed to and executed an "Intellectual Property Rights and Non-Disclosure Agreement" containing these and other provisions (hereinafter "Goewey Agreement").

19.     Neumann agreed to and executed an "Intellectual Property Rights and Non-Disclosure Agreement" containing these and other provisions (hereinafter "Neumann Agreement"). The Goewey Agreement and the Neumann Agreement will be referred to collectively herein as "the Neumann and Goewey Agreements" or "the Agreements."

20.     Full Tilt shared confidential and proprietary information, including trade secrets, with Goewey and Neumann after they commenced working for Full Tilt. The confidential information included providing Goewey and Neumann access to Full Tilt's Salesforce Database.

21.      The Neumann and Goewey Agreements each contained a provision stating that Neumann and Goewey, respectively, understood and acknowledged that Full Tilt's confidential and proprietary information had been developed or obtained by Full Tilt through the investment of significant time, effort and expense, and that such information is valuable and provides Full Tilt with significant competitive advantage. The Agreements also contained a provision stating that such information needed to be protected from improper disclosure and improper use.

4812-0210-7285

22.     Full Tilt also provided Goewey and Neumann with specialized training related to Full Tilt's products.  Upon information and belief, it is the specialized training and selling that Full Tilt provided to Goewey and Neumann which made them attractive to PDI as potential employees.

23.     The Neumann and Goewey Agreements contain a non-solicitation covenant, prohibiting them from soliciting employees, customers and vendors of Full Tilt during their employment with Full Tilt and for a one-year period after the termination of their employment; a non-disclosure covenant, prohibiting them from disclosing confidential information and trade secrets learned during their employment with Full Tilt; and a covenant requiring them to return to Full Tilt upon their separation of employment, all work product and company and third-party information (the "Employee Covenants").

24.     The Neumann and Goewey Agreements further provide that the prevailing party in any dispute arising under the Agreements shall receive its fees (including attorney fees) and costs incurred to enforce the terms and conditions of the Agreements.

**C. Goewey and Neumann Solicited Each Other and At Least One Other Full Tilt Employee to Leave Full Tilt for Employment with PDI**

25.     On or about February 11, 2019, Jerad Wittwer, the founder of PDI, sent an email to Goewey at his Full Tilt email address, stating in relevant part:  *"I was told you maybe [sic] looking for a change I am looking to hire someone in that area if you are interested email me."*  Goewey responded by providing Wittwer his personal cell number.

26.     Upon information and belief, Goewey subsequently solicited Neumann to leave Full Tilt and join PDI, and Neumann and Goewey planned to resign from Full Tilt on the same day and join PDI.  This solicitation of one another violated the Neumann and Goewey Agreements.

27.     Goewey and Neumann each resigned on Friday, March 8, 2019.  Their resignation letters were virtually identical.  Goewey emailed his resignation letter to Neumann, which Neumann essentially copied.  They both claimed to be resigning and not giving a standard two-week notice due to "personal circumstances."

28.     Upon information and belief, between approximately February 11, 2019, when PDI first contacted Goewey, and March 8, 2019, when Goewey and Neumann resigned, they conspired to violate the terms of the Neumann and Goewey Agreements.

29.     For example, on or about February 14, 2019, Neumann sent a list of customer leads from Salesforce to himself.

30.     Approximately two weeks before Goewey and Neumann resigned, Wittwer left a voicemail on the personal cell phone of another Full Tilt employee.  Wittwer indicated that he would like to speak with the Full Tilt employee.  The Full Tilt employee did not give his telephone number to PDI, but, upon information and belief, Goewey and/or Neumann provided the Full Tilt employee's telephone number to Wittwer.  The day that Goewey and Neumann resigned from Full Tilt, they told the same Full Tilt employee that he should go with them to work for PDI.  This solicitation also violated the non-solicitation provisions of the Neumann and Goewey Agreements.

31.     Upon information and belief, during the week of March 3, 2019, Goewey and Neumann went to PDI's headquarters in Utah while they were both still employed and being paid by Full Tilt.  At least one of them posted pictures of this trip on social media.

**D.  Goewey and Neumann Have Failed to Return Full Tilt's Property, including Information Contained on Various Electronic Devices**

32.     After Goewey and Neumann resigned on Friday, March 8, 2019, they did not immediately return various electronic devices that had been issued to them during their

employment with Full Tilt and which were the property of Full Tilt.  These electronic devices included their company iPhones, tablets, and laptop computers.  They also refused to take calls from Full Tilt.  Full Tilt demanded the return of its property, including these electronic devices.

33.     Goewey did not return Full Tilt's phone, tablet and laptop until on or about March 14, 2019, and Neumann did not return Full Tilt's phone, tablet and laptop until on or about March 15, 2019.  Between February 11, 2019, when PDI emailed Goewey, and March 15, 2019, when Neumann returned Full Tilt's electronic devices, Goewey and Neumann plugged numerous USB devices, printers, and other electronic devices into their Full Tilt computers.

34.     Indeed, on or about March 7, 2019, when Goewey was in Utah with PDI based on social media pictures, he accessed at least one computer program that was not installed by Full Tilt and which allows .pdf files to be transferred to other platforms.  Full Tilt has also discovered weekly sales emails that Goewey forwarded to his personal email.

35.     Full Tilt also has discovered information indicated that Neumann attempted to delete information from the SalesForce Database.

36.     Furthermore, upon information and belief and pursuant to a forensic review of the computer, Neumann plugged in the following devices to his Full Tilt computer in order to download, print, and/or take Full Tilt information and property:

| DATES  NEUMANN CONNECTED DEVICES TO FULL TILT LAPTOP | SERIAL NUMBER/UID OF CONNECTED DEVICE | TYPE OF DEVICE ATTACHED TO FULL TILT COMPUTER |
|---|---|---|
| 3/8/2019 | 2b07a6a22555076cad2d4f8fd1f7cf007b5db1da | Apple iPhone |
| 3/2/2019, 2/14/2019 | 4C530001240411114215 | USB Flash Drive USB Device |
| 3/2/2019, 2/14/2019 | 60A44C42651BBE21AB515591 | Kingston DataTraveler 3.0 USB Device |
| 3/2/2019, 2/14/2019 | 9BC10C00782529F0 | USB DISK USB Device |
| 3/2/2019 | 45a603d1a12087a9751498b73c63a9ce7cf468e1 | Apple iPad |
| 3/2/2019, 2/14/2019 | LGLS9913e701706 | G4 |
| 3/2/2019, 2/14/2019 | 5FF1735C | Generic Flash Disk USB Device |
| 3/2/2019, 2/14/2019 | C9AC979F | Generic Flash Disk USB Device |
| 3/2/2019, 2/14/2019 | 7&40b9edd&0&0002 | USB Mass Storage Device |
| 3/2/2019, 2/14/2019 | e84e5f032214eee1 | Galaxy Tab A |
| 2/25/2019 | 6&38782936&0&0002 | HP DeskJet 3700 series printer (REST_WinUSB) |
| 2/25/2019 | CN89C6P2BH06GZ | USB Composite Device |

37.     Upon information and belief and pursuant to a forensic review of the computer, Goewey plugged in the following devices to his Full Tilt computer in order to download, print, and/or take Full Tilt information and property:

| DATES GOEWEY CONNECTED DEVICES TO FULL TILT LAPTOP | SERIAL NUMBER/UID OF CONNECTED DEVICE | TYPE OF DEVICE ATTACHED TO FULL TILT COMPUTER |
|---|---|---|
| 3/11/2019 | 6&B0D1ACA&1&0001 | USB Printing Support |
| 3/11/2019 | CNB9GDK256 | USB Composite Device |
| 3/7/2019 | NA9TXEZQ | Seagate BUP Slim BK USB Device |
| 3/3/2019 | KO5F22N1524 | HL-DT-ST DVDRAM GP50NB40 USB Device |
| 3/3/2019 | B1501020000265 | USB Device |
| 3/3/2019 | Generic_USB_Mass_Storage_Device | GENPLUS USB-MSDC DISK A USB Device |
| 3/3/2019 | 130818v01 | MXT-USB Storage Device USB Device |
| 3/3/2019 | 1051102016EMJ1GC | USB Flash Disk USB Device |
| 3/3/2019 | 642b415d73264b2cecda57b37504224e8784cfb5 | Apple iPhone |
| 3/3/2019 | 9230389c850c6a2e8dd71f1f3ae2a296f75d1614 | Apple iPhone |
| 3/3/2019, 2/20/2019 | 994f37d85bd95511288a7df6813ec13d440251fa | Apple iPad |
| 2/19/2019 | 5&1898C516 | Unknown Device |

38.     Full Tilt, through counsel, has demanded that Neumann and Goewey surrender the above-listed devices to Full Tilt for inspection, and all other devices that contain Full Tilt information, and all Full Tilt information that they printed or otherwise have in a non-electronic form.  They have failed to return such devices and such other information, including documents that they printed.  The forensic review of their Full Tilt laptop computers has revealed that they deleted numerous documents, they accessed confidential customer information before and after

-10-

they resigned (but before they returned their laptop computers), and they accessed cloud-based storage sites.

39.     Upon learning of Neumann and Goewey's willful violations of the Neumann and Goewey Agreements with Full Tilt and their respective breaches of the duty of loyalty they owed to Full Tilt while employed, Plaintiff, through counsel, sent Neumann and Goewey each a letter on March 12, 2019, demanding that they: (i) cease and desist from violating the Agreements, (ii) return all Full Tilt property, and (iii) not destroy or delete any relevant documents or electronic information.

40.     Plaintiff, through counsel, also sent a letter to PDI, notifying Wittwer of the Neumann and Goewey Agreements, and demanding that PDI not interfere with Neumann's and Goewey's contractual, statutory, and common law obligations to Full Tilt. Full Tilt also requested that PDI institute a "litigation hold" and not destroy or delete any relevant documents or electronic information.  Full Tilt asked PDI to complete a search of its offices and electronic systems to determine if Goewey or Neumann had shared Full Tilt information with PDI and return to Full Tilt any Full Tilt information PDI found.

41.     PDI responded by immediately retaining one law firm to represent PDI, Goewey and Neumann.

**E. <u>Neumann Has Solicited At Least One Full Tilt Customer</u>**

42.     Notwithstanding that Full Tilt put Defendants on notice of their violations of the Neumann and Goewey Agreements and other applicable law (including Goewey's and Neumann's common law duty of loyalty) and PDI's and Defendants' counsel made various representations on behalf of Defendants to Full Tilt, Defendants have continued to willfully disregard their legal obligations to Plaintiff.

4812-0210-7285

43.     For example, Neumann visited and solicited a customer of Full Tilt in early April 2019.  A picture of that visit is below:



44.     Upon information and belief, Defendants are relying upon confidential and proprietary information, including trade secrets, that belong to Plaintiff, to solicit Full Tilt's customers.

45.     Additionally, Defendants deleted information relevant to this action, including wiping clean one of the iPhones before returning it to Full Tilt, and deleting messages and other information from the other iPhone.  Defendants also engaged in spoliation by deleting documents from the laptop computers they used at Full Tilt.

-12-

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against Both Defendants)**

46.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

47.     Plaintiff and Defendants entered into the Neumann and Goewey Agreements, respectively, pursuant to which Defendants agreed, *inter alia*, to comply with the Employee Covenants, as set forth above.

48.     The Neumann and Goewey Agreements are valid, binding, and enforceable.

49.     The Neumann and Goewey Agreements are supported by substantial, valid consideration.

50.     Defendants intentionally and materially breached, and continue to threaten to breach, the Neumann and Goewey Agreements by the conduct described above, including without limitation, by: (a) soliciting Plaintiff's customers; (b) relying on, disclosing, and/or using Plaintiff's confidential and trade secret information for Defendants' benefit; (c) taking and failing to return Plaintiff's information at the conclusion of their employment with Plaintiff; and (d) soliciting one another, and at least one other employee, to leave Full Tilt and join PDI.

51.     Plaintiff has fully performed its material obligations under the agreement or is excused from performing all of its obligations due to the wrongful acts of Defendants.

52.     Plaintiff has been damaged by Defendants' breach of contract, in an amount to be proven at trial.

53.     Plaintiff is entitled to its reasonable attorneys' fees and costs pursuant to the Neumann and Goewey Agreements.

-13-

54.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY**
**(Against Both Defendants)**

55.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

56.     Defendants were employees and agents of Plaintiff.  Defendants had access to confidential business information of Plaintiff, as well as authority to act on behalf of Plaintiff within the scope of their duties.

57.     As employees and agents, Defendants owed fiduciary duties, including a duty of loyalty, to Plaintiff while Defendants were employed by Plaintiff.

58.     Defendants breached their fiduciary duties, including their duty of loyalty, to Plaintiff as described herein.

59.     Defendants' breaches of their duties have caused Plaintiff damages in an amount to be proven at trial.  Plaintiff also seeks disgorgement of wages for the period of their disloyalty.

60.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

**THIRD CAUSE OF ACTION**
**CIVIL THEFT UNDER MINN. STAT. § 604.14**
**(Against Both Defendants)**

61.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

-14-

62.     The confidential, trade secret, and proprietary information described herein, including without limitation, the Salesforce Database (the "Property"), is the exclusive property of Plaintiff.  Plaintiff therefore had and continues to have a property interest in the Property.

63.     Defendants willfully obtained or exercised control over Plaintiff's personal Property, including its confidential and trade secret information, as described above, without authorization or other lawful justification.

64.     Defendants' actions were taken with the intent to deprive Plaintiff of the use, possession, and benefit of that Property.

65.     Defendants' actions have caused and will continue to cause damages to Plaintiff in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**CONVERSION**
**(Against Both Defendants)**

66.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

67.     The confidential, trade secret, and proprietary information described herein, including without limitation the Property, is the exclusive property of Plaintiff.  Plaintiff therefore had and continues to have a property interest in the Property.

68.     Defendants have intentionally taken Plaintiff's Property without authorization or lawful justification.

69.     Defendants intentionally, willfully, and knowingly committed unauthorized acts of dominion, ownership, or control over the Property that belongs to Plaintiff in a way that is contrary to Plaintiff's right to the Property, without authorization or lawful justification.

4812-0210-7285

70.     Defendants have refused to give, return, and/or cease use of Plaintiff's Property, even when asked.

71.     Defendants' actions were taken with the intent to deprive Plaintiff of the use, possession, and benefit of the valuable Property.

72.     By their actions, Defendants have interfered with and deprived Plaintiff of its rights to exercise control over its Property and, therefore, Defendants have converted Plaintiff's Property.

73.     Defendants' conversion has and will continue to cause Plaintiff damages in an amount to be proven at trial.

74.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will continue to cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

### FIFTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT
#### (Against Both Defendants)

75.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

76.     At all times relevant to this action, Plaintiff had and continues to have valid and enforceable contracts with its employees.

77.     Upon information and belief, Defendants knew, know, or reasonably should have known of the existence of such contracts between Plaintiff and its employees.

78.     Upon information and belief, by contacting and soliciting Plaintiff's employees to, *inter alia*, terminate their employment with Plaintiff and begin employment with PDI, Defendants also intentionally and improperly interfered with, and continue to interfere with,

Plaintiff's contracts with its employees by wrongful means. The wrongful means include using confidential information in order to solicit Plaintiff's employees and induce Plaintiff's employees to breach those contracts.

79.     Defendants were not justified in interfering with Plaintiff's contracts with its employees and such interference was made for the purpose of injuring Plaintiff and/or improperly benefiting Defendants.

80.     Plaintiff has been damaged by Defendants' tortious inference in an amount to be proven at trial.

81.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against Both Defendants)

82.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

83.     Plaintiff has and has had long-standing, continuing business relationships with its customers, which have created the reasonable expectation that Plaintiff would continue to do business with such entities for Plaintiff's economic advantage.

84.     At all times relevant to this action, Plaintiff had prospective economic advantage with its customers and prospective customers.

85.     Upon information and belief, Defendants knew, know, or reasonably should have known of the existence of the prospective economic advantage between Plaintiff and its customers and prospective customers.

4812-0210-7285

86.     Upon information and belief, using information acquired from Plaintiff, Defendants intentionally and improperly interfered with, and continue to interfere with, Plaintiff's prospective economic advantage by wrongful means.

87.     The wrongful means include using confidential information in order to solicit and interfere with Plaintiff's prospective economic advantage with its customers and prospective customers.

88.     Defendants' interference was independently tortious and/or violated state or federal statutes as described herein.

89.     Defendants were not justified in interfering with Plaintiff's reasonable expectation of prospective economic advantage with its customers and prospective customers.

90.     In the absence of Defendants' wrongful conduct, it is reasonably probable that Plaintiff would have realized greater economic advantage from its relationships with its customers and prospective customers and/or would continue to do so in the future.

91.     Plaintiff has been damaged by Defendants' tortious inference in an amount to be proven at trial.

92.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

**SEVENTH CAUSE OF ACTION**
**MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836(b)**
**(Against Both Defendants)**

93.     Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

94.     Plaintiff's confidential business information, including without limitation its Salesforce Database housed on "Salesforce," constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3).

95.     These trade secrets are not generally known or readily ascertainable to persons outside of Plaintiff, and Plaintiff has undertaken reasonable steps to protect the secrecy and confidentiality of its trade secrets.

96.     These trade secrets have independent economic value and provide Plaintiff with an economic and competitive advantage.

97.     Defendants have willfully and improperly acquired Plaintiff's trade secrets and knew, know, or reasonably should have known that the means of acquisition were improper, as described above.  Defendants disclosed and used, and are continuing to disclose and use, Plaintiff's trade secrets without Plaintiff's consent for their own wrongful benefit, and Defendants acquired knowledge of the trade secrets by improper means, as described above.

98.     Defendants misappropriated Plaintiff's trade secrets by acquiring those secrets in violation of a confidential relationship between Defendants, on the one hand, and Plaintiff, on the other hand.

99.     Defendants have misappropriated Plaintiff's trade secrets, within the meaning of 18 U.S.C. § 1839(3), (5), as described above.

100.    Defendants' misappropriation of Plaintiff's trade secrets has caused Plaintiff damages in an amount to be proven at trial.  Plaintiff further seeks from Defendants an award of its attorney's fees, interest, and court costs.

101.    In addition, Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious, and in conscious disregard of the rights of Plaintiff. Consequently, Plaintiff is

entitled to an award of punitive damages, pursuant to 18 U.S.C. § 1836(b)(3)(C), sufficient to punish Defendant and serve as a deterrent to such false, deceptive, and unlawful conduct.

102.   Defendants' actual and threatened misappropriation of trade secrets has caused and will continue to cause Plaintiff real, immediate, and irreparable injury.

103.   Plaintiff has no adequate remedy at law to prevent Defendants' future misappropriation, disclosure, or use of Plaintiff's trade secrets and, therefore, is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

**EIGHTH CAUSE OF ACTION**
**MISAPPROPRIATION UNDER MINNESOTA TRADE SECRETS ACT**
**(Against Both Defendants)**

104.   Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph as if fully set forth herein.

105.   Plaintiff's confidential business information, including without limitation its Salesforce Database housed on "Salesforce," constitutes trade secrets within the meaning of the Minn. Stat. § 325C.01, subd. 5.

106.   These trade secrets are not generally known or readily ascertainable to persons outside of Plaintiff, and Plaintiff has undertaken reasonable steps to protect the secrecy and confidentiality of its trade secrets.

107.   These trade secrets have independent economic value and provide Plaintiff with an economic and competitive advantage.

108.   Defendants have willfully and improperly acquired Plaintiff's trade secrets and knew, know, or reasonably should have known that the means of acquisition were improper, as described above.  Defendants disclosed and used, and are continuing to disclose and use,

Plaintiff's trade secrets without Plaintiff's consent for their own wrongful benefit and acquired knowledge of the trade secret by improper means, as described above.

109.     Defendants misappropriated Plaintiff's trade secrets by acquiring those secrets in violation of a confidential relationship between Defendants, on the one hand, and Plaintiff, on the other hand.

110.     Defendants' conduct constitutes misappropriation within the meaning of Minn. Stat. § 325C.01, subd. 3.

111.     Defendants' misappropriation of Plaintiff's trade secrets has caused Plaintiff damages in an amount to be proven at trial.  Plaintiff further seeks from Defendants an award of its attorney's fees, interest, and court costs.

112.     In addition, Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious, and in conscious disregard of the rights of Plaintiff. Consequently, Plaintiff is entitled to an award of punitive damages, pursuant to Minn. Stat. § 325C.03, sufficient to punish Defendant and serve as a deterrent to such false, deceptive, and unlawful conduct.

113.     Defendants' actual and threatened misappropriation of trade secrets has caused and will continue to cause Plaintiff real, immediate, and irreparable injury.

114.     Plaintiff has no adequate remedy at law to prevent Defendants' future misappropriation, disclosure, or use of its trade secrets and, therefore, it is entitled to injunctive relief pursuant to Minn. Stat. § 325C.02.

**NINTH CAUSE OF ACTION**
**CONSPIRACY**
**(Against Both Defendants)**

115.     Plaintiff hereby incorporates by reference all allegations set forth above as if fully set forth herein.

4812-0210-7285

116.     Through their actions as described herein, Defendants agreed by words and/or conduct to accomplish wrongful or unlawful goals through wrongful or unlawful means in order to effectuate a scheme, including without limitation, to: (a) cause Plaintiff's employees to leave their employment at Plaintiff and join PDI; (b) solicit Plaintiff's customers; and (c) interfere with Plaintiff's continuing relationships with its employees and customers.

117.     Defendants committed at least one overt action in furtherance of such wrongful or unlawful goals, including without limitation, (a) soliciting Plaintiff's employees to leave their employment at Plaintiff and join PDI; (b) soliciting at least one of Plaintiff's customers; and (c) taking and using Plaintiff's confidential and trade secret information.

118.     Defendants' conspiracy has caused Plaintiff damages in an amount to be proven at trial.

119.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

**TENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against Both Defendants}**

120.     Plaintiff hereby incorporates by reference all allegations set forth above as if fully set forth herein.

121.     As a result of the actions described above, Defendants have obtained various benefits.

122.     These benefits were received and obtained at Plaintiff's expense.

123.     Defendants received these benefits without justification and under circumstances that would make it unjust for them to retain those benefits.

124.     Defendants' actions have caused and will continue to cause Plaintiff damages in an amount to be proven at trial.

125.     Plaintiff has no adequate remedy at law for Defendants' misconduct, and such misconduct has caused and will cause Plaintiff real, immediate, and irreparable injury, entitling Plaintiff to injunctive relief.

## JURY DEMAND

Plaintiff demands trial by jury for all issues so triable.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants, and further:

A.     Determine and declare that Defendants have violated the Neumann and Goewey Agreements and must comply with the Agreements, and require specific performance thereto;

B.     Award Plaintiff actual, compensatory, and all other allowable damages;

C.     Award Plaintiff pre- and post-judgment interest;

D.     Award Plaintiff the costs of this action, including reasonable attorneys' fees;

E.     Require Defendants to provide an accounting to Plaintiff and grant Plaintiff other equitable relief;

F.     Grant Plaintiff injunctive relief to preclude further illegal acts against Plaintiff and compel the return of all of Plaintiff's property; and

G.     Grant any further relief as the Court deems just and appropriate, and any other relief as allowed by law.

4812-0210-7285

Date:   April 25, 2019                    Respectfully submitted,

                                          NILAN JOHNSON LEWIS PA

                                          By:  *s/ Sarah B. Riskin*
                                          Katie M. Connolly (#0338357)
                                          Sarah B. Riskin (#0388870)
                                          120 South Sixth Street, Suite 400
                                          Minneapolis, MN 55402
                                          Telephone: (612) 305-7500
                                          Fax: (612) 305-7501
                                          kconnolly@nilanjohnson.com
                                          sriskin@nilanjohnson.com

                                          and

                                          Sybil R. Kisken (*pro hac vice* admission motion to
                                          be filed)
                                          Thomas C. Bell (*pro hac vice* admission motion to
                                          be filed)
                                          DAVIS GRAHAM & STUBBS LLP
                                          1550 17th Street, Suite 500
                                          Denver, Colorado  80202
                                          Telephone: (303) 892-7497
                                          Sybil.Kisken@dgslaw.com
                                          Tom.Bell@dgslaw.com

                                          ***Attorneys for Plaintiff Full Tilt Performance LLC***

4812-0210-7285